**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>          v.<br><br>PAUL HASTY, JR. and WALLACE,<br>SAUNDERS, AUSTIN, BROWN & ENOCHS,<br>CHARTERED,<br><br>                              Defendants. | Case No. 10-CV-00209 |

**FIRST AMENDED COMPLAINT FOR LEGAL MALPRACTICE, BREACH OF
CONTRACT, CONSTRUCTIVE FRAUD AND OTHER RELIEF**

Now comes the Plaintiff, ALLSTATE INSURANCE COMPANY ("Allstate"), by its
undersigned attorneys, and as its First Amended Complaint for Legal Malpractice, Breach of
Contract, Constructive Fraud & Other Relief against Defendant, PAUL HASTY, JR. ("Hasty"),
individually and as a former employee and shareholder in the law firm of Wallace, Saunders,
Austin, Brown, & Enochs, Chartered, and against the Defendant law firm of WALLACE,
SAUNDERS, AUSTIN, BROWN, & ENOCHS, CHARTERED ("WSABE") (hereinafter,
collectively, "Defendants"), states as follows:

**NATURE OF THE CASE**

1.      Plaintiff Allstate respectfully seeks to have this Court impose compensatory and
punitive damages, as well as other relief, against the Defendants, to the extent allowed under
Missouri law, to redress claims for substandard and negligent professional legal representation
provided to Allstate by the Defendants, for breach of contract, as well as claims of negligent

supervision,[1] *respondeat superior* liability, and constructive fraud, which relate to and/or arise from the defense of a Missouri state court civil lawsuit, *Johnson v. Allstate Ins. Co.*, No. 0516 CV 00128, 2007 WL 5086272 (Trial Order) (Mo. Cir. Jan. 12, 2007), *aff'd*, 262 S.W.3d 655 (Mo. Ct. App. July 29, 2008) (No. WD 68169), *rehearing and/or transfer denied*, (Mo. Ct. App. Sept. 2, 2008), *application for transfer denied*, (Dec. 16, 2008) (hereinafter "Johnson/Davis Lawsuit"), and/or Defendant Hasty's post-trial conduct.

2.      The Johnson/Davis Lawsuit involved a bad faith failure to settle ("BFFS") claim brought by Allstate's insured, Wayne Davis ("Davis"), a Missouri resident, and third-party claimants, Edward and Virginia Johnson (the "Johnsons"), a Missouri couple who had previously brought a personal injury action against Davis for injuries they suffered when he, driving while intoxicated, crashed into their car on March 24, 2000.

3.      Following the accident, Allstate initially declined to settle with the Johnsons for policy limits due to their repeated failure to provide written consent to authorize the release of medical records to facilitate Allstate's full investigation of the March 24, 2000 accident. But, by February 2001, Allstate made a timely policy limit offer after receiving the requested medical records, which the Johnsons declined. In November 2002 the Johnsons sued Davis in Missouri State Court, and Davis consented to a judgment for approximately $5 million, including $1.5 million in punitive damages, and negotiated a settlement agreement with the Johnsons. As part of this settlement, the Johnsons agreed not to collect any of the judgment from Davis in exchange for his assigning to them 90% of his claim against Allstate for bad faith refusal to settle (hereinafter, the "Settlement Agreement"). Davis retained 10% of his claim against Allstate—a

---

[1]  For the reasons set forth in this Court's September 14, 2010 Order, which dismissed Count III of Plaintiff Allstate's Complaint, Allstate re-pleads Count III seeking relief against WSABE for negligent supervision for the sole purpose of preserving the issue for appeal.

material act which Hasty and WSABE failed to effectively attempt to plead as an affirmative defense or to introduce during the jury trial in the Johnson/Davis Lawsuit and which, among other material failures, proximately caused Allstate to suffer significant monetary injuries.

4.     Allstate had a longstanding relationship with Hasty and WSABE and relied on Defendants' legal expertise, judgment, and professional integrity.  Hasty and WSABE regularly were assigned matters by Allstate and consulted by Allstate for legal opinions.  Hasty and WSABE primarily communicated through the assigned Allstate claim representative, a non-attorney, for each matter.  Hasty and WSABE were aware that the claim representative had primary administrative responsibilities for day-to-day claim processing and maintenance.  Hasty and WSABE were aware that the claim representative had no authority to make legal decisions and placed trust and confidence in Hasty's and WSABE's professional judgment and relied on recommendations from Hasty and WSABE with regard to decisions concerning bad faith litigation involving Allstate.

5.     From approximately July 2003 through December 2007, the Defendants herein represented Allstate in the Johnson/Davis Pre-Lawsuit Claim and subsequent Johnson/Davis Lawsuit.  Defendants provided these legal services pursuant to Allstate's billing guidelines, which include, but are not limited to, 1998 written billing guidelines ("Billing Guidelines") circulated to retained attorneys and law firms, including Defendants.  Defendants' reference to the "interim billing schedule" in invoice transmittals submitted to Allstate regarding the Johnson/Davis Pre-Lawsuit Claim and subsequent Johnson/Davis Lawsuit is derived from the 1998 Billing Guidelines.

6.     On November 8, 2006, following a jury trial in the Johnson/Davis Lawsuit, a verdict returned and the Circuit Court of Jackson County, Missouri entered judgment against

3

Allstate awarding approximately $5.8 million in compensatory damages and $10.5 million in punitive damages. *Johnson*, 2007 WL 5086272 (Trial Order) (Mo. Cir. Jan 12, 2007). A copy of the Trial Order is attached hereto as Exhibit A.

7. Following the jury verdict, Allstate engaged the Kansas City, Missouri law offices of Sonnenschein Nath & Rosenthal, LLP to pursue an appeal of the adverse jury verdict. On August 29, 2008, the Missouri Court of Appeals for the Western District issued a 20 page memorandum opinion and order affirming the jury verdict. *Johnson*, 262 S.W.3d 655. Subsequently, the appellate court also denied a motion for rehearing and application for transfer to the Supreme Court on September 2, 2008, and December 16, 2008, respectively. *Id.* A copy of the appellate court memorandum opinion and order (hereinafter, the "Appellate Decision") is attached hereto as Exhibit B.

8. As further detailed in this First Amended Complaint, each of the Defendants, acting collectively or individually, were negligent in the legal representation provided to Allstate in the Johnson/Davis Lawsuit including, but not limited to, the following failures: failure to properly investigate the background of the lawsuit; delays in responding to discovery during the pre-trial phase; failure to depose relevant witnesses; failure to prepare Allstate witnesses for their depositions; failure to prepare Bobby Waldrup to testify at trial in the Johnson/Davis Lawsuit; failure to adequately monitor and supervise the WSABE attorney/s who participated in the defense of Allstate in the Johnson/Davis Lawsuit; failure to timely and effectively plead appropriate affirmative defenses; failure to obtain an expert witness to solicit appropriate trial testimony in opposition to Plaintiffs' testifying experts; failure to call Allstate's insured, Davis, to testify during trial; failure to effectively oppose a motion to exclude the Settlement Agreement from evidence at trial; failure to otherwise effectively attempt to introduce the Settlement

4

Agreement as a defense exhibit at trial; failure to offer any defense exhibits, whatsoever, at trial including, but not limited to, existing documentary evidence to support Allstate witnesses' testimony regarding the Johnsons' repeated failure, despite requests, to provide signed releases for medical records in furtherance of Allstate's accident investigation; failure to call any witnesses on behalf of Allstate at trial; failure to properly evaluate Allstate's exposure; and failure to otherwise present any affirmative defense case-in-chief.

9.    Each of these failures, among others, either individually or collectively had a material and proximate cause impact on the outcome of the Johnson/Davis Lawsuit. Each of the failures further detailed in this First Amended Complaint evidences actionable professional negligence, breach of contract, and claims for negligent supervision, and *respondeat superior* liability. Such conduct warrants this Court's entry of judgment in this action against the Defendants, to the extent allowed under Missouri law to redress such claims, for compensatory damages in an amount sufficient to redress the injury that Allstate sustained as a result of the Defendants' conduct, and the entry of punitive damages to the extent allowed under Missouri law for the claims stated herein.

**THE PARTIES**

10.    Plaintiff Allstate is an Illinois domiciled insurance company organized under Illinois State law. At all times relevant to this First Amended Complaint, Allstate maintained its headquarters and principal place of business in the State of Illinois at 2775 Sanders Road, Northbrook, Cook County, Illinois, and was therefore a citizen of the State of Illinois.

11.    Hasty is an attorney who, at all times relevant to this First Amended Complaint, was licensed to practice law in the States of Kansas and Missouri and, on information and belief, resided in Overland Park, Kansas and was, therefore, a citizen of Kansas. At all times relevant to

5

this First Amended Complaint, Hasty was engaged in the full-time practice of law in the States of Missouri and Kansas, maintaining a law office as an employee and shareholder with the Defendant law firm WSABE, located at 10111 West 87th Street, Overland Park, Johnson County, Kansas. Plaintiff Allstate is asserting professional liability, breach of contract, and constructive fraud claims against Hasty.

12.     WSABE is a professional corporation organized under Kansas State law, and therefore was a citizen of Kansas at all times relevant to this First Amended Complaint. At all times relevant to this First Amended Complaint, WSABE maintained its principal place of business at 10111 West 87th Street, Overland Park, Johnson County, Kansas.

13.     At all times relevant to this First Amended Complaint, the WSABE law firm engaged in the business of providing legal services through its agents, servants, shareholders and/or employees including, but not limited to, Hasty. At all times material to this First Amended Complaint, the WSABE law firm held itself out to the public as possessing special expertise in the defense of bad faith failure to settle insurance coverage claims, among other things. Plaintiff Allstate is asserting a professional liability claim against Hasty and the WSABE law firm. Additionally, Allstate is asserting claims against Hasty and the WSABE law firm for breach of contract, as well as against the WSABE law firm for negligent supervision and *respondeat superior* liability.

14.     At all times relevant to this First Amended Complaint, Hasty, and others working for the WSABE law firm, were each the agents, servants, shareholders, and/or employees of the WSABE law firm, and were each acting within the course and scope of their respective employment with the WSABE law firm and, at all times material hereto, were each actively engaged in the business of the WSABE law firm.

6

## JURISDICTION AND VENUE

15.     Jurisdiction is granted the Court by 28 U.S.C. §1332, as all parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     At all times relevant to this First Amended Complaint, in carrying out their respective legal representation obligations to Plaintiff Allstate, the Defendants purposefully directed litigation-related activities and communications to Plaintiff Allstate's St. Louis, Missouri and/or Kansas City, Missouri market claims offices.  Accordingly, this Court's exercise of jurisdiction over the Defendants comports with notions of fair play and substantial justice. Additionally, the underlying automobile accident in this matter took place in the Western District of Missouri and, likewise, the related trial in this matter took place in the Circuit Court of Jackson County, Missouri from November 6, 2006 to November 8, 2006.

17.     Venue is proper pursuant to 28 U.S.C. §1391 as the Defendants maintained a principal place of business within the Western District of Missouri at all times relevant to this First Amended Complaint, and all of the alleged claims asserted herein occurred in the Western District of  Missouri, as further detailed herein.

## BACKGROUND FACTS RELEVANT TO ALL CLAIMS

**A.     The March 24, 2000 Accident and Allstate's Initiation of Investigation Efforts.**

18.     On March 24, 2000, the Johnsons were severely injured in an automobile accident that occurred in Camden County, Missouri, where the Johnsons then resided.  On that date, a vehicle driven by Davis, also a Missouri resident, crossed the center line of the highway on which the Johnsons were traveling in their vehicle, striking the Johnsons' vehicle head-on (the "Accident").  *See* <u>Exhibit B</u>, Appellate Decision, 262 S.W.3d at 658.

7

19.     On March 24, 2000, Davis maintained automobile insurance with Allstate, by and through a local insurance agent located in Camdenton, Missouri. The Allstate policy had limits of $25,000.00 per person and $50,000.00 per occurrence. Pursuant to the terms of the policy, Allstate had the exclusive right to investigate the Johnsons' claims and to negotiate any settlements. *Id.* at 659.

20.     As a result of the Accident, Edward Johnson was in the hospital for 35 days. He spent 21 of those days in a neuro-intensive care unit (NICU) and was in a coma during part of that time. His hospital bills totaled $185,000. *Id.* As a result of the Accident, Virginia Johnson was in the hospital for 40 days and spent part of this time in NICU. She underwent six surgeries. Her hospital bills totaled $135,000. *Id.*

21.     On or about March 27, 2000, Davis informed his local, Camdenton, Missouri Allstate insurance agent of the crash and, in turn, the local agent notified Allstate's St. Louis, Missouri office. Davis' local agent informed Allstate's St. Louis market claims office that Davis had been drinking, drove on the wrong side of the road, hit another car head on, and that the two persons in the other car were seriously injured and had been taken to the hospital by helicopter. *Id.*

22.     The St. Louis market claims office began an investigation into the Accident. The St. Louis market claims office initially assigned investigation of Davis' claim to Mary Greene ("Greene"). Davis admitted to Greene that he had drunk beer before the crash. He told her that he did not recall the crash and that he did not know the names of the persons in the other car. *Id.* (Appellate Decision, Exhibit B hereto).

23.     During her investigation Greene learned, among other things, that the law enforcement officers who responded to the Accident scene tested Davis' blood alcohol content at

8

more than twice the legal limit. Greene also discovered the Johnsons' names, where Virginia Johnson was employed, that the Johnsons' car was a total loss, and that both of the Johnsons were being treated in a local hospital. *Id.* Upon discovering this information, Greene made plans to visit the Johnsons in the hospital.

### B. Allstate Receives Representation Notice from the Johnsons' Attorney and Requests Medical and Wage Information to Complete Investigation.

24.     On or about March 29, 2000, Greene received a telephone message from a lawyer, David Sexton ("Sexton"), indicating that he represented the Johnsons and that Allstate was to have absolutely no direct contact with them. *See* Exhibit B, Appellate Decision, 262 S.W.3d at 659. Sexton sent a letter to Greene on that same date, providing notice of his representation and of his contingent fee agreement. *Id*. The letter also stated, "[m]y clients are currently seeking medical treatment and I will forward medical records and bills as they become available." *Id.* Following receipt of the letter, Greene did not visit the Johnsons in the hospital as she had planned.

25.     On March 30, 2000, the Johnson/Davis claim was transferred to Allstate adjuster Bobby Waldrup ("Waldrup"). Waldrup's duties as an Allstate staff claims representative included the handling of bodily injury claims in which a claimant was represented by an attorney. Waldrup reviewed the file of Davis' claim, which included the information that Greene had obtained. Waldrup noted that Davis carried minimum limits of coverage, $25,000 per person and $50,000 per occurrence. After reviewing the file, he entered a note in the file: "Need[] to know how extensive injuries are; may be policy limit case." *Id.*

26.     On or about March 30, 2000, Waldrup received a lien letter from Sexton notifying Allstate that he had a minimum of a one-third interest in the proceeds of any settlement. Sexton also informed Waldrup that his investigation of the facts indicated "that the incident was caused

9

solely by [Davis'] negligence." *Id.* at 659-60. Sexton additionally informed Waldrup that the Johnsons were receiving medical treatment and that he would forward medical records and bills as they became available. *Id.* at 660.

27.     On or about April 2, 2000, Waldrup's assistant (Jackie Glenn—hereinafter, "Glenn") called Sexton to request basic information about lost wages and medical bills, which Sexton refused to provide until he was told the policy limits. On April 4, 2000, Glenn sent a letter to Sexton acknowledging his letter of representation and requesting execution of an enclosed "Medical Wage Authorization" form. *Id.* at 660. The letter instructed Sexton to return the form to Glenn so she could "secure medical reports and other information needed to properly evaluate this claim." *Id.*

28.     Allstate waited for the medical information that Sexton had promised in his March 28, 2000 letter. Allstate could not obtain medical and wage information directly, because Sexton had forbidden direct contact with the Johnsons and had not provided authorizations to allow Allstate to obtain information. *Id.*

**C.     The Johnsons' Pre-Lawsuit Claim and Policy Limits Demand Letter.**

29.     On April 13, 2000, Sexton purportedly sent a demand letter to Allstate. It was addressed to Waldrup and allegedly sent by certified mail. *See* <u>Exhibit B</u>, Appellate Decision, 262 S.W.3d at 660. In the letter, Sexton offered to settle all of the Johnsons' claims against Davis for the limits of his insurance with Allstate. The letter stated that the Johnsons' demand would remain open for 60 days from Allstate's receipt of the letter. *Id.* However, Waldrup had no independent recollection of receiving this April 13, 2000 letter and neither the Allstate claim file nor the electronic claim diary reflect contemporaneous receipt of this April 13, 2000 letter. The April 13, 2000 letter did not become a part of the Allstate claim file until Waldrup requested

10

it from the Johnsons' attorney, Attorney McDuffey, in December 2002, after the Johnsons filed suit against Davis.

> ### D. Additional Correspondence Regarding Damages and Settlement Demands.

30. On June 19, 2000, Sexton sent a letter in which he demanded that Allstate pay the Johnsons for the loss of their vehicle. *Id.*, Exhibit B, Appellate Decision, 262 S.W.3d at 660. Glenn responded by sending Sexton a letter, dated June 26, 2000, in which she stated that Allstate still needed the Johnsons to sign the medical authorizations so that Allstate could evaluate their claim. *Id.* Sexton did not answer the letter. On November 7, 2000, Glenn sent Sexton another letter that was identical to her letter of June 26, 2000. *Id.*

31. On November 16, 2000, Sexton sent a letter to Glenn informing her that the Johnsons still were receiving treatment and that his offer to settle the claim for policy limits had expired. *Id.*, Exhibit B, Appellate Decision, 262 S.W.3d at 660. Glenn referred to Sexton's November 16, 2000 letter in the file of Davis' claim and added, "I never did receive a demand package." *Id.*

32. On December 20, 2000, Sexton, for the first time, sent Glenn a box containing the Johnsons' medical records and bills. In a cover letter, Sexton stated in the letter that both of the Johnsons still were receiving treatment "so the medical is not complete." *Id.*, Exhibit B, Appellate Decision, 262 S.W.3d at 660. Sexton noted that, up to that point, Edward Johnson's medical bills were approximately $120,386, and Virginia Johnson's were approximately $86,567. Sexton stated that medical records and bills were still forthcoming and that he would send them to her as they became available. *Id.* Sexton also advised that he believed that the Johnsons' medical bills would total $400,000 to $500,000. *Id.*

11

33.     On January 15, 2001, less than a month after finally receiving medical records from the Johnsons, Waldrup left a message on Sexton's telephone in which he offered to pay the Johnsons the $50,000 policy limits of Davis' policy. *Id.*, Exhibit B, Appellate Decision, 262 S.W.3d at 660. On February 8, 2001, Sexton sent a letter rejecting Waldrup's offer and noting that the Johnsons' demand for Davis' policy limits had expired. *Id.* Sexton advised Allstate that the Johnsons' new demand was for $3 million and that this demand would remain open for 30 days. On April 4, 2001, Allstate rejected the Johnsons' new demand. *Id.*

E.     **The Johnsons' Lawsuit Against Davis, Confessed Judgment & Settlement Agreement.**

34.     On November 20, 2002, the Johnsons sued Davis in Missouri state circuit court. *Id.*, Exhibit B, Appellate Decision, 262 S.W.3d at 661. Allstate retained Attorney Charles Gentry to defend Davis and Attorney Gentry filed an appearance on behalf of Davis on January 15, 2003. On January 15 2003, Attorney Gentry transmitted correspondence to Davis advising him of the representation and advising him of the potential exposure to punitive damages, which are not covered by the policy. Throughout the course of his representation of Davis, Attorney Gentry made repeated efforts to contact Davis to obtain documents responsive to discovery requests, to schedule deposition dates, to advise Davis of the importance of retaining a personal attorney, and to implore Davis to participate in his defense. On February 4, 2004, Allstate sent a reminder letter to Davis informing him of his potential exposure for liability in excess of the policy limits and reiterating Attorney Gentry's suggestion to obtain personal counsel. In or around March 2004, Davis retained independent counsel.

35.     The Johnsons' suit against Davis did not go to trial. Instead, on November 29, 2004, the Johnsons and Davis entered into the Settlement Agreement entitled, "Assignment and Settlement Agreement Pursuant to Mo.Rev.Stat. Section 537.065 (1986)." *Id.* In this Settlement

12

Agreement, Davis admitted that he negligently had allowed his vehicle to cross the highway centerline and to collide with the Johnsons' car head on, that his blood alcohol content was .203 percent, and that his conduct of driving while intoxicated showed complete indifference to, or conscious disregard for, the safety of others. *Id.* Davis consented to judgment for the Johnsons for $2.5 million in actual damages, $1.5 million in punitive damages, and more than $1 million in prejudgment interest, plus costs. In return for the Johnsons' covenant not to execute the judgment against him, Davis assigned to the Johnsons 90 percent of his bad faith refusal to settle claim against Allstate. *Id.* The circuit court entered a consent judgment for the Johnsons based on the Settlement Agreement. *Id.*

**F.      The Johnson/Davis Bad-Faith Lawsuit Against Allstate.**

36.      On January 5, 2005, the Johnsons and Davis sued Allstate and Davis in the Circuit Court of Jackson County, Missouri. The Johnson/Davis Lawsuit is formally captioned, *Johnson and Davis v. Allstate*, Case No. 0516-CV00128 (Cir. Ct. of Jackson County, Mo.) (Division 02). *See* Exhibit B, Appellate Decision, 262 S.W.3d at 655.

37.      In the first count of the Petition, the Johnsons asserted a claim for equitable garnishment and prayed for judgment against Allstate and Davis for more than $1 million in prejudgment interest, post-judgment interest since November 29, 2004, attorney fees, and costs. *Id.* In the second count of the Petition, the Johnsons asserted a claim for bad faith refusal to settle against Allstate. In the third count of the Petition, the Johnsons and Davis asserted a claim for bad faith refusal to settle against Allstate. In the fourth count, Davis asserted a claim for bad faith refusal to settle against Allstate. In counts two, three, and four of the Petition, the Johnsons and/or Davis prayed for damages to satisfy the November 29, 2004 consent judgment, punitive damages, attorney fees, post-judgment interest, and costs. *Id.*

13

38. The Johnsons originally named Davis as a defendant and asserted their claim for equitable garnishment against him and Allstate in Count I. <u>Exhibit B</u>, Appellate Decision, 262 S.W.3d at 661, n. 1. In asserting their BFFS claims, the Johnsons set forth one count on their behalf, exclusively, one count on Davis' behalf, and one count on behalf of themselves and Davis jointly. *Id*. On the day of trial, the court realigned the parties to designate Davis as a plaintiff without objection from Hasty. *Id*. Davis, however, did not attend the trial and was not called to testify at trial by Hasty.

39. The circuit court convened a jury trial on November 6, 2006. *Id*. Two days later, the jury returned a verdict for the Johnsons and Davis on each count and assessed more than $5.8 million in compensatory damages and $10.5 million in punitive damages against Allstate, including prejudgment interest on the garnishment claim. *Id*. at 660, n.2; and 661. The court entered judgment on the jury's verdict. *Id*.

40. On July 29, 2008, the Missouri Court of Appeals, Western District, affirmed the circuit court judgment. *Id.*, <u>Exhibit B</u>, Appellate Decision, 262 S.W.3d at 655. Allstate was represented on appeal by Kansas City, Missouri office of the law firm of Sonnenschein Nath & Rosenthal LLP.

41. The appellate court found that *five out of the eight points* on appeal had been waived by the failure of Allstate's trial counsel, Hasty and the WSABE law firm, to preserve them at trial. *Id*. These points are addressed in detail below, at paragraphs 72–89 of this First Amended Complaint.

**G. Allstate's Retention of Hasty and the WSABE Law Firm.**

42. Based upon past experience in retaining Hasty and WSABE, as well as Hasty's and WSABE's ongoing representation and reputation that they were experienced in litigating bad

14

faith claims, on or around July 29, 2003, Allstate retained the services of Hasty and the WSABE law firm to represent Allstate in the Johnson/Davis Pre-Lawsuit Claim and the subsequently filed Johnson/Davis Lawsuit.  *See* <u>Exhibit C</u>, WSABE Law Firm Invoice for professional Services (July 23, 2003–August 16, 2003 Regarding the Matter of Allstate Insurance Company/Johnson, Edward & Virginia)

43.     Upon accepting the above-described retention, WSABE and Hasty undertook the duty to fully represent the interests of Allstate.

44.     In so doing, WSABE's and Hasty's primary contacts were with the assigned, non-lawyer, claim representative who relied on and reposed trust and confidence in Hasty's professional judgment.  Throughout the trial of the Johnson/Davis Lawsuit, Hasty and WSABE maintained responsibility for the tactical and strategic decisions made in the defense of the Johnson/Davis lawsuit.

**COUNT I:**
**PROFESSIONAL NEGLIGENCE- LEGAL MALPRACTICE**

**(As against Hasty & the WSABE law firm)**
**(Missouri Common Law Claim)**

45.     Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 44 of this First Amended Complaint.

46.     In or around February 2005, Hasty and the WSABE law firm entered an appearance in the Johnson/Davis Litigation case on behalf of Plaintiff Allstate.  *See* <u>Exhibit D</u>, the Johnson/Davis Lawsuit Docket Sheet.  This occurrence further evidences the attorney-client relationship between Plaintiff Allstate, Hasty and the WSABE law firm, as to the Johnson/Davis Lawsuit.

15

47.     Over the course of the next two years, Hasty and the WSABE law firm purported to represent and protect the legal interests of Allstate in the Johnson/Davis Lawsuit. Said representation consisted primarily of defensive or reactive measures designed purely to attempt to counter motions and other legal maneuvers made by the Johnson/Davis litigation team representing the plaintiffs in that action. Neither Hasty, nor any of the WSABE's other agents, servants, shareholders, and/or employees, undertook significant effort to effectively prosecute and develop Allstate's defensive case or to move the case toward a successful conclusion.

48.     At key times during the pendency of the Defendants' collective legal representation of Allstate in the Johnson/Davis Lawsuit, Hasty and the WSABE law firm, collectively and/or individually, failed to reasonably protect the material legal interests of Plaintiff Allstate.

49.     Hasty and the WSABE law firm each failed to exercise the ordinary skill, knowledge, and care expected to be exercised by members of the legal profession who hold themselves out as insurance coverage and civil litigation attorneys.

50.     In providing legal services to Plaintiff Allstate, Hasty and the WSABE law firm each owed a fiduciary duty to Plaintiff Allstate to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances.

51.     Hasty and the WSABE law firm each breached a fiduciary duty owed to Plaintiff Allstate to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstance, because the Defendants were negligent in their representation of Allstate including, but not limited, to the following:

**A.    Failure to Adequately Manage Representation of Allstate.**

52.    On information and belief, at the time Hasty was engaged by Allstate for purposes of the Johnson/Davis Lawsuit, the volume of legal matters Hasty was responsible for, and/or the amount of hours being billed by Hasty, was excessive and higher than the amount of matters and hours billed by a similarly situated attorney.

53.    On information and belief, at all times relevant to this First Amended Complaint, Hasty did not, as a matter of course, delegate substantive work in litigation matters managed by him to other attorneys.

54.    On information and belief, at the time Hasty was engaged by Allstate to manage the Johnson/Davis Lawsuit he knew or should have known that the volume of legal matters he was handling and/or the amount of hours he was billing were too high for him to agree to represent Allstate in the Johnson/Davis Lawsuit.

55.    On information and belief, at the time Hasty was engaged by Allstate to manage the Johnson/Davis Lawsuit he knew or should have known that the volume of legal matters he was handling and/or the amount of hours he was billing was too high for him to adequately devote enough time and resources to his representation of Allstate in the Johnson/Davis Lawsuit.

56.    Hasty concealed from Allstate the high volume of legal matters he was managing and/or the high number of hours he was billing to other clients.

57.    Hasty concealed from Allstate his inability to dedicate adequate time and resources on the Johnson/Davis Lawsuit.

**B.    Failure to Adequately Investigate and Respond to Discovery Requests.**

58.    Among other things, Hasty and WSABE law firm were negligent, careless, willful, wanton and/or reckless in the performance of the legal representation obligation to Allstate in the failure to adequately investigate, evaluate, and respond to discovery requests.

59.    One of the prominent issues at trial in the Johnson/Davis lawsuit revolved around the date Allstate first received the demand later dated April 6, 2000 from Attorney David Sexton.

60.    The Johnsons and Davis served requests to admit on Allstate in the Johnson/Davis Lawsuit related to whether and when Bobby Waldrup received the April 6, 2000 demand letter.

61.    Without full and complete investigation, or consideration of the interests of Allstate, Hasty recommended to his primary Allstate contact, the assigned claim representative, that Allstate respond to these requests to admit as true.  Hasty also indicated that failure to respond to the requests on or before August 12, 2006 would cause the requests to admit to be deemed admitted and true.

62.    Based on Hasty's recommendation, in response to Request to Admit No. 1, Allstate admitted that "Bobby Waldrup received the April 6, 2000 demand letter offered by Dave Sexton on behalf of the Johnsons (attached as Exhibit 17) on or about April 13, 2000" despite Allstate's inability to identify the individual that purportedly signed the certification, and despite Bobby Waldrup's adamant denial that he ever saw this April 6, 2000 letter until on or around December 2002 after specifically requesting it from Attorney McDuffey.

63.    Hasty initially responded to the requests to admit informally by correspondence to counsel dated July 21, 2006 wherein he indicated:  "Allstate does not deny receiving the letter that was the subject of the Requests for Admissions, so all of those are admitted."

18

64. After counsel repeatedly requested formal responses to the requests to admit, and after Hasty previously indicated that Allstate was admitting all of the requests to admit, Hasty for the first time, nearly two months overdue, asserted objections to the First Request for Admissions on October 3, 2006.

65. Hasty failed to evaluate properly the implications of admitting Request to Admit No. 1 and failed to advise Allstate of the possible implications of admitting Request to Admit No. 1.

66. The failure of Hasty and the WSABE law firm to represent adequately Allstate's legal interests in the Johnson/Davis Lawsuit with respect to adequate investigation and response to discovery requests had a material and causal impact on the outcome of the trial.

**C.    Failure to Prepare Effectively for Trial and Failure to Prepare Witnesses for Testimony.**

67. Among other things, Hasty and WSABE law firm were negligent, careless, willful, wanton and/or reckless in the performance of the legal representation obligation to Allstate in the failure to effectively prepare for trial.

68. In or around April 7, 2006, the Court scheduled the trial to commence on November 6, 2006. The trial took place over a three-day period: November 6, 2006, November 7, 2006, and November 8, 2006.

69. In the days preceding trial, Hasty spent negligible time preparing the only witness to testify on behalf of Allstate for trial even though he knew Allstate faced potential liability in excess of $ 2.5 million. On November 3, 2006, Allstate contacted Hasty regarding the trial proceedings for .10 hours. And on that same day, Hasty conferred with the only Allstate representative presented at trial, Bobby Waldrup, for .10 hours to discuss his appearance at trial.

19

Hasty made no other effort to confer with Bobby Waldrup or to prepare Bobby Waldrup, who had never testified at any hearing or trial before, for his testimony.

70.     In the days preceding trial, Hasty spent minimal time preparing for trial. On November 4 2006, Hasty conferred with an Allstate employee regarding trial strategy and anticipated defenses for .30 hours and spent an additional .30 hours reviewing a file the court ordered be produced. On November 5, 2006, on the eve of trial, Hasty spent a total of 9.4 hours attending to the Allstate claim file. In addition to preparing various motions and papers for submittal to the court for a total of 1.5 hours, Hasty spent 4.6 hours reviewing deposition testimony and 3.1 hours reviewing and indexing the claim file.

71.     The failure of Hasty and the WSABE law firm to adequately represent Allstate's legal interests in the Johnson/Davis Lawsuit with respect to adequate preparation for trial, including, but not limited to the preparation of witnesses for trial, had a material and causal impact on the outcome of the trial.

**D.     Failure to Plead Invalidity of Johnson/Davis Settlement Agreement at Trial.**

72.     Among other things, Hasty and the WSABE law firm were negligent, careless, willful, wanton, and/or reckless in the performance of the legal representation obligation to Allstate in the failure to plead the invalidity of the collusive Settlement Agreement as an affirmative defense in Allstate's Answer to the Petition filed in the Johnson/Davis Lawsuit, or at some point reasonably thereafter. As a result of Defendants' errors and omissions, the Appellate Court ruled this defense had been waived. *See* Exhibit B, Appellate Decision, 262 S.W.3d at 667.

73.     In rejecting Allstate's argument on appeal that the Johnsons' and Davis' BFFS claims were barred because the Settlement Agreement was void, the appellate court specifically

determined as follows: "Allstate's claims [on appeal] regarding the validity of the agreement constitute affirmative defenses. . . . Rule 55.08 requires a party to plead affirmative defenses in its responsive pleading by setting forth 'a short and plain statement of the facts showing that the pleader is entitled to the defense.'" *See* Exhibit B, Appellate Decision, 262 S.W.3d at 667.

74.     Although Allstate, by and through the Hasty and the WSABE law firm, made general allegations that the purported assignment of claim was void and should be barred by waiver and estoppel, the appellate court further determined that, "Allstate did not plead any facts to support these allegations" or present in its Answer to the Petition any of the arguments asserted on appeal. *Id.* Critically, the appellate court found that, "[t]he first time that Allstate argued that the agreement violated public policy was in its oral motion for a directed verdict at the close of the plaintiffs' case. The first time that Allstate argued that the agreement was the product of fraud and collusion was in its motion for judgment notwithstanding the verdict or for a new trial. *This was too late. Affirmative defenses that are not properly pleaded are deemed waived.*" *Id.* (citation omitted and emphasis added). This failure constituted a waiver of argument, which the Defendants, individually and/or collectively, knew or should have known at the time of filing the Answer, or at some reasonable point thereafter prior to trial.

75.     The failure of Hasty and the WSABE law firm to plead the invalidity of the collusive Settlement Agreement as an affirmative defense had a material and proximate cause impact on the outcome of the trial because the Settlement Agreement was void, thereby negating the assignment of Davis' BFFS claim to the Johnsons. Although "labeled" an agreement in accordance with Mo. Rev. Stat. §537.065, the Agreement was not a "§537.065" agreement. Section 537.065 permits agreements where the claimant agrees to limit the recovery against the tortfeasor *to the assets in his insurance contract*. In this case, the Settlement Agreement, which

21

included a consent judgment for $5 million, exceeded Davis' policy limits (minimum limits of $25,000 per person and $50,000 per occurrence) and included an assignment of 90% of Davis' first party BFFS claim against Allstate to the Johnsons. As a result, the true wrongdoer toward the Johnsons—Davis—profited to the extent of more than $1 million. The Defendants knew or should have known and recognized this distinction as well as the collusive nature of the agreement and highlighted these facts in Allstate's Answer and/or Affirmative Defenses at the time of filing, or at some point thereafter prior to trial.

E.   **Failure to Adequately Represent Allstate's Interests with Respect to the Johnsons' Claim for Bad Faith Failure to Settle and to Compel the Appearance and Testimony of Plaintiff Davis (Allstate's Insured) at Trial.**

76.   Among other things, Hasty and the WSABE law firm were negligent, careless, willful, wanton, and/or reckless in the performance of their respective legal representation obligation to Plaintiff Allstate in the failure to adequately represent Allstate's legal interests during the jury trial with respect to the Johnson's BFFS claim including, but not limited to, the failure to raise any objection to the trial court's realignment of Davis' party status on the day of trial, the failure to compel the appearance and testimony of Davis (Allstate's insured) at trial, and the failure to compel the appearance and testimony of Sexton (the Johnsons' claim attorney), among others.

77.   Importantly, the appellate court underscored in its opinion the significance of the fact that the Johnsons and Davis sued together as joint plaintiffs. In Count II of their First Amended Complaint, the Johnsons sued Allstate for BFFS, "pleading that they had been assigned ninety percent of Davis' claim, and that, as a result of Allstate's bad faith, they (*that is, the Johnsons*) had suffered 'injuries, including emotional distress, anguish, and attorney's fees.'" *See* Exhibit B, 262 S.W.3d at 670. In Count III of the First Amended Complaint, which

22

"purported to be a claim for BFFS," the parties alleged that "both Davis and the Johnsons suffered injuries, 'including emotional distress, anguish, and attorney's fees.' Count IV was a claim for BFFS brought by Davis, again alleging injuries, including "emotional distress, anguish, and attorney's fees." *Id.*

78.     The appellate court determined that, "Allstate had no legal duty to the Johnsons to negotiate [a settlement] with them. Any emotional distress caused to the Johnsons by Allstate's refusal to settle is not compensable." *Id.* This argument was not adequately pursued by the Defendants during the pre-trial development of the litigation or at trial. Moreover, although Davis pleaded the personal injury of emotional distress, anguish and attorney's fees, there is nothing in the record to evidence that the Defendants took any steps whatsoever to compel Davis' appearance at trial. Indeed, the appellate court underscored that, "Davis did not attend the trial in person or appear by deposition. There was no testimony as to any damages caused him by Allstate's bad faith." *Id.*

79.     Under Missouri State rules of civil procedure, one or more motions could, and should, have been made to the trial court by the Defendants on behalf of Allstate, but were not, objecting to the realignment of Davis' party status, seeking to compel Davis' appearance and testimony at trial or, alternatively, seeking to introduce Davis' deposition into evidence at trial. Importantly, the appellate court determined there was "<u>substantial</u> evidence" at trial that went unchallenged to demonstrate how badly the Johnsons were damaged in the collision, *id.* (emphasis added), which, <u>in the absence of any testimony from Davis</u>, likely conflated the issue of damages and inappropriately led the jury to view its charge as one to design a punitive damage award "to punish Allstate for its actions and omissions [toward the Johnsons <u>and</u> Davis] in leaving Davis unprotected. *Id.* at 670-71.

23

80.     The failure of Hasty and the WSABE law firm to adequately represent Allstate's legal interests in the Johnson/Davis Lawsuit with respect to the Johnson's BFFS claim, including a failure to object to the realignment of Davis' party status on the day of trial, compel the appearance and testimony of Plaintiff Davis (Allstate's insured) at trial, or to compel the appearance and testimony of Sexton at trial, as more particularly described above, had a material and causal impact on the outcome of the trial.  The punitive damages award assessed against Allstate was likely improperly calculated to include purported damages suffered by the Johnsons.  But for the Defendants' failure to adequately represent Allstate's legal interests in the Johnson/Davis Lawsuit with respect to the Johnsons' BFFS claim, as described, the jury's extreme compensatory and punitive damages award assessed against Allstate would not have occurred.

**F.     Failure to Retain the Services of an Expert for Trial and to Otherwise Present an Affirmative Defense Case-in Chief on Allstate's Behalf.**

81.     Among other things, Hasty and the WSABE law firm were negligent, careless, willful, wanton, and/or reckless in the performance of their respective legal representation obligation to Allstate in the failure to retain an expert witness on behalf of Allstate regarding the plaintiffs' contention that Allstate intentionally disregarded the Davis' financial interest in its failure to settle the underlying claim.

82.     On appeal, Allstate contended that the Johnsons and Davis failed to present adequate evidence, as a matter of law, to support the trial court's submission of the parties' BFFS claims to the jury.  *See* Exhibit B, 262 S.W.3d at 661.  In rejecting Allstate's argument on appeal, the appellate court decision presented a detailed, approximate four-page account of the plaintiffs' expert opinion trial testimony that was offered in support of their BFFS claims.  *Id.* at 663-666. The appellate court highlighted that plaintiffs presented two expert witnesses in support of their

24

BFFS claims: One, "a territorial supervisor for Fireman's fund with more than 26 years' experience in the insurance industry," <u>Exhibit B</u>, Appellate Decision, 262 S.W.3d at 663; and the second, "a Kansas City lawyer who had 39 years' experience in representing plaintiffs, defendants, and insurance companies in personal injury cases. *Id*. This expert testimony was unrebutted at trial.

83. In its decision, the appellate court juxtaposed its multi-page account of the plaintiffs' expert opinion testimony against the sparse and limited fact testimony that was elicited from Allstate witnesses by the Defendants herein on the issue of adequacy of effort. The appellate court ultimately concluded that plaintiffs' experts opined that, "Allstate did not handle the Johnsons' claim in accord with insurance industry standards or its own 'Third Party Good Faith Claim Handling Best Practices' manual." *Id.* at 663. Conversely, the appellate court noted that "the [trial] record indicates that Allstate did nothing with the demand letter," *id.* at 664, and noted, further, that the trial record failed to rebut plaintiffs' substantial expert testimony and evidence of "Allstate's failure to recognize the severity of the Johnsons' injuries and the probability that the claim would far exceed Davis' policy limits; [Allstate's] failure to investigate the claim and respond to the demand in accordance with insurance industry standards and its own good faith claim handling manual; and its failure to advise Davis of the demand, his likely exposure for an excess judgment, and his right to retain counsel." *Id.* at 665.

84. Ultimately, the appellate court concluded that the foregoing failures evidenced in the trial record on the part of Allstate, "are all circumstances supporting a reasonable inference that Allstate's refusal to settle was in bad faith." *Id.* The appellate court thus concluded that the trial record, as allowed to be developed by Allstate's trial counsel (the Defendants herein), presented circumstances to support the submitting of the BFFS claims to the jury. *Id.*

25

85.     The failure of Hasty and the WSABE law firm to retain an expert witness on behalf of Allstate, regarding the plaintiffs' contention that Allstate intentionally disregarded Davis' financial interest in its failure to settle the underlying claim, as more particularly described above, had a material and proximate cause impact on the outcome of the trial.  But for the Defendants' unwarranted failure to retain and call any expert witness at trial on Allstate's behalf to counter plaintiffs' two expert witnesses' testimony on the sufficiency of evidence issue, the trial court's extreme compensatory and punitive damages award assessed against Allstate would not have occurred.

G.      **Failure to Effectively Oppose Exclusion of the Johnson/Davis Settlement Agreement From Trial Evidence and to Otherwise Effectively Attempt to Introduce the Johnson/Davis Settlement Agreement During Trial.**

86.     Hasty and the WSABE law firm were negligent, careless, willful, wanton, and/or reckless in the performance of their respective legal representation obligation to Allstate in the failure to effectively oppose plaintiffs' motion *in limine* to exclude evidence of the collusive Settlement Agreement including, but not limited to, a complete failure to articulate bias and/or collusion as a basis for why the Agreement was admissible.  At trial, Allstate argued: "Davis agreed to a judgment against him for punitive damages on the condition that, if the Johnsons prevailed, he would receive 10 percent of the damages" and the "evidence of the agreement was admissible to show Allstate's good faith because Allstate agreed that the compensatory damages in the agreement were fair and reasonable so that Davis would be insulated from further liability."  *See* Exhibit B, Appellate Decision, 262 S.W.3d at 667.  The trial court granted plaintiffs' motion *in limine*, finding that *Hackman v. Dandamudi*, 733 S.W.2d 452 (Mo. Ct. App. 1986), prohibited evidence of the Settlement Agreement.  *Hackman* prohibits evidence of a settlement agreement at trial unless used to show witness bias or fraud and collusion.

26

87.    Although the Defendants attempted again to introduce evidence of the agreement during Mr. Johnson's testimony, arguing "that [Allstate] should be allowed to introduce this evidence because Davis had agreed to $1.5 million in punitive damages, 10 percent of which he stood to get back," the appellate court again found that "Allstate did not state why this fact made the agreement admissible." *Id.*

88.    The Defendants' failure to secure the admissibility of the collusive Settlement Agreement had a material and proximate cause impact on the outcome of trial because the Settlement Agreement would have shown the jury that Davis was not harmed as much as claimed because he retained 10% of the bad faith claim, the Johnsons agreed not to execute the judgment against him, and he assigned the remaining 90% of his bad faith claim to them. Davis' retention of 10% of the recovery from Allstate was evidence of bias and collusion, as demonstrated by the fact that Davis—the true wrongdoer as to the Johnsons—garnered over $1.5 million from the jury verdict. The Defendants, as trial counsel, could have argued that the Settlement Agreement was relevant for these reasons, and that Davis was incentivized to inflate the damages because of the 90%/10% split between the Johnsons and him. *See Gulf Insurance Co. v. Noble*, 936 S.W. 2d 810 (Mo. 1997) (settlement by insured with accident victim after insurer refused to defend was unreasonable and unenforceable against $1 million policy where victim incurred damages totaling $12,000 yet insured agreed to entry of consent judgment of $1 million).

89.    Here, the Johnsons' medical bills were approximately $300,000, yet Davis agreed to a *$5 million judgment* ($2.5 million actual damages and $1.5 million punitives). But for the Defendants' failure to have this evidence introduced to the jury, the unwarranted and excessive jury verdict against Allstate would not have occurred.

27

**WHEREFORE**, as to Count I, Plaintiff Allstate demands (a) compensatory damages against Hasty and the WSABE law firm in a sum of more than $16.3 million, paid in accordance with judgment entered against Allstate on January 12, 2007; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against Hasty and the WSABE law firm to the extent allowed under Missouri law; (f) the costs incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

**COUNT II:**
**BREACH OF CONTRACT**

**(As against Hasty & the WSABE law firm)**
**(Missouri Common Law Claim)**

90.     Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 89 of this First Amended Complaint.

91.     Hasty and the WSABE law firm each failed to exercise the ordinary skill, knowledge, and care required under the parties' contractual agreement for legal services.

92.     In agreeing to provide legal services to Plaintiff Allstate, Hasty and the WSABE law firm each owed a contractual duty to Plaintiff Allstate to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances.

93.     Hasty and the WSABE law firm each breached the contractual duty owed to Plaintiff Allstate to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances.

94.     Hasty and the WSABE law firm each breached the respectively owed contractual duty to Plaintiff Allstate to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances because each of the Defendants was

28

negligent in its representation of Allstate including, but not limited to, the specific failures set forth, above, in paragraphs 72–89, which are incorporated herein by reference, as if fully set forth in Count II of this First Amended Complaint.

95.    But for the above-described material breaches of contract by Hasty and the WSABE law firm, Plaintiff Allstate would not have been assessed the significant damages awarded by the jury following the trial of the Johnson/Davis Litigation.

96.    The above-described conduct of Hasty and the WSABE law firm showed complete indifference to or conscious disregard for the legal rights of Plaintiff Allstate and proximately caused injury to Allstate including, but not limited to, the unwarranted and excessive jury verdict against it.

**WHEREFORE**, as to Count II, Plaintiff Allstate demands (a) compensatory damages against Hasty and the WSABE law firm in a sum of more than $16.3 million, paid in accordance with judgment entered against Allstate on January 12, 2007; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against Hasty and the WSABE law firm to the extent allowed under Missouri law; (f) the costs incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

## COUNT III:[2]
## NEGLIGENT SUPERVISION

**(As against the WSABE law firm)**
**(Missouri Common Law Claim)**

97.     Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 96 of this First Amended Complaint.

98.     The WSABE law firm owed Allstate an ordinary duty of care to control and supervise the actions of its employee and shareholder, Hasty, in regard to the representation of Allstate in the Johnson/Davis Lawsuit and, specifically, to use ordinary care to protect Allstate against unreasonable risks of harm.

99.     WSABE law firm breached the duty of ordinary care of control and supervision to protect Allstate from unreasonable risks of harm with respect the acts and omissions of Hasty, as evidenced by the specific failures set forth, above, in paragraphs 72–89, which are incorporated herein by reference, as if fully set forth in Count III of this First Amended Complaint.

100.    But for the above-described material and proximate cause breaches of the duty of ordinary care to protect Allstate from unreasonable harm, Allstate would not have been assessed the significant damages awarded by the jury following the trial of the Johnson/Davis Lawsuit.

101.    The above-described conduct of the WSABE law firm showed complete indifference to or conscious disregard for the legal rights of Plaintiff Allstate and proximately caused injury to Allstate including, but not limited to, the unwarranted and excessive jury verdict against it.

---

[2] Although the Court's September 14, 2010 Order dismissed Count III of Plaintiff Allstate's Complaint, Allstate re-pleads Count III seeking relief against WSABE for negligent supervision for the sole purpose of preserving the issue for appeal.

**WHEREFORE**, as to Count III, Plaintiff Allstate demands (a) compensatory damages against WSABE in a sum of more than $16.3 million, paid in accordance with judgment entered against Allstate on January 12, 2007; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against WSABE to the extent allowed under Missouri law; (f) the costs incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

**COUNT IV:**
**AGENCY & RESPONDEAT SUPERIOR**

**(As against the WSABE law firm)**
**(Missouri Common Law Claim)**

102.    Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 96 of this First Amended Complaint.

103.    The WSABE law firm owed Allstate an ordinary duty of care to control the actions of its employee, agent, servant, and shareholder, Hasty, in regard to the representation of Allstate in the Johnson/Davis Lawsuit and, specifically, to use ordinary care to protect the plaintiff against unreasonable risks of harm.

104.    At all times relevant to this First Amended Complaint, Hasty provided legal representation to plaintiff Allstate in the Johnson/Davis Lawsuit while acting within the scope of his employment as a litigation attorney within the employment of the WSABE law firm.

105.    Plaintiff Allstate, at all times relevant to this First Amended Complaint, relied on Hasty and his master and employer, the WSABE law firm, to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances.  At all times relevant to this lawsuit, the WSABE law firm had the right and,

31

indeed, an affirmative duty to manage, control and direct the professional conduct of its employee, agent, servant and shareholder, Hasty, in providing legal representation to Allstate in the Johnson/Davis Lawsuit, including but not limited to a right to direct the methods by which its employees, agents, servants and shareholders, including Hasty, performed and otherwise carried out the provision of legal services to clients.

106.    The WSABE law firm, as the master and employer of Hasty at all times relevant to this First Amended Complaint, is liable under principles of *respondeat superior* for Hasty's professional negligence and breach of contract, as evidenced by the specific failures set forth, above, in paragraphs 72–89, which are incorporated herein by reference, as if fully set forth in Count IV of this First Amended Complaint.

107.    But for the above-described material and proximate cause breaches of the duty of ordinary care to protect Allstate from unreasonable harm, plaintiff Allstate would not have been assessed the significant damages awarded by the jury following the trial of the Johnson/Davis Litigation.

108.    The above-described conduct of the WSABE law firm showed complete indifference to or conscious disregard for the legal rights of Plaintiff Allstate and proximately caused injury to Allstate including, but not limited to, the unwarranted and excessive jury verdict against it.

**WHEREFORE**, as to Count IV, Plaintiff Allstate demands (a) compensatory damages against WSABE in a sum of more than $16.3 million, paid in accordance with judgment entered against Allstate on January 12, 2007; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against WSABE to the extent allowed under Missouri law; (f) the costs

32

incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

## COUNT V:
## CONSTRUCTIVE FRAUD – BREACH OF LOYALTY POST-TRIAL VERDICT

### (As against Hasty)
### (Missouri Common Law Claim)

109.    Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 44 of this First Amended Complaint.

110.    Following their negligent representation of Allstate in the Johnson/Davis Lawsuit jury trial, Hasty and the WSABE law firm (at which Hasty had been a partner for three decades) each continued to fail to protect the legal interests of Allstate post-trial.  Among other things, the Defendants, collectively and/or individually, repeatedly breached the fiduciary duty that they each owed to Plaintiff Allstate to fully disclose to Allstate all material facts concerning the trial or timely provide all relevant materials to appellate counsel, which prevented Allstate from making an informed decision as to the risk of pursuing an appeal versus negotiating a settlement with the Johnsons.

111.    As Allstate's attorney, Hasty owed fiduciary duties of loyalty and candor to Allstate to act in the best interest of his client Allstate and to fully disclose to his client all facts that had any impact on the rights and interests of Allstate in light of the $16 million jury verdict in the Johnson/Davis Lawsuit.

112.    Hasty breached his continued fiduciary duties of loyalty and candor post-trial by, among other things, failing to disclose to Allstate attorney Richard J. Vavra ("Vavra"), who was Hasty's corporate headquarters contact for all purposes related to the Johnson/Davis Lawsuit, the pre-trial and trial related failures in exercising the requisite professional duty of care owed by

33

Defendants to Allstate. Vavra was the person at Allstate who had the responsibility of recommending whether an appeal be pursued or whether the case should be settled after the jury verdict issued. The array of pre-trial and trial related failures caused by the Defendants created an overarching risk of appellate waiver that was never communicated to Vavra by Hasty or WSABE, despite the fact that the Defendants were ethically obligated to do so. If Vavra had been made aware of these failures in their entirety, the only course that would have been recommended and pursued after the jury verdict was settlement.

113.    Hasty's omissions and failures to disclose were designed solely to further his own interest in maintaining his lucrative practice from Allstate, rather than mitigating the damage caused by his numerous errors and omissions in conducting the Johnson/Davis Lawsuit

114.    As a result of Hasty's material omissions and concealments, Allstate was deprived of the information necessary to properly evaluate the plaintiffs' post-trial settlement offer of $10 million in the Johnson/Davis Lawsuit.

115.    Had Hasty made Allstate aware of the material facts he concealed, Allstate would have recognized that an appeal was unlikely to succeed and would have negotiated a settlement with the plaintiffs in the Johnson/Davis Lawsuit rather than pursuing an appeal.

116.    No other tort encompasses Hasty's concealment of his errors, omissions, and failures during the Johnson/Davis Lawsuit.

**WHEREFORE**, as to Count V, Plaintiff Allstate demands (a) compensatory damages against Hasty in a sum of more than $7.0 million; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against Hasty to the extent allowed under Missouri law; (f) the

costs incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

## COUNT VI:
## AGENCY & RESPONDEAT SUPERIOR

### (As against the WSABE law firm)
### (Missouri Common Law Claim)

117.     Plaintiff Allstate incorporates as if set forth more fully herein Paragraphs 1 through 116 of this First Amended Complaint.

118.     The WSABE law firm owed Allstate an ordinary duty of care to control the actions of its employee, agent, servant, and shareholder, Hasty, in regard to the representation of Allstate in the Johnson/Davis Lawsuit and, specifically, to use ordinary care to protect the plaintiff against unreasonable risks of harm.

119.     At all times relevant to this First Amended Complaint, Hasty provided legal representation to plaintiff Allstate in the Johnson/Davis Lawsuit while acting within the scope of his employment as a litigation attorney within the employment of the WSABE law firm.

120.     Plaintiff Allstate, at all times relevant to this First Amended Complaint, relied on Hasty and his master and employer, the WSABE law firm, to use that degree of skill and learning ordinarily used by members of the legal profession under the same or similar circumstances.  At all times relevant to this lawsuit, the WSABE law firm had the right and, indeed, an affirmative duty to manage, control and direct the professional conduct of its employee, agent, servant and shareholder, Hasty, in providing legal representation to Allstate in the Johnson/Davis Lawsuit, including but not limited to a right to direct the methods by which its

35

employees, agents, servants and shareholders, including Hasty, performed and otherwise carried out the provision of legal services to clients.

121.    The WSABE law firm, as the master and employer of Hasty at all times relevant to this First Amended Complaint, is liable under principles of *respondeat superior* for Hasty's constructive fraud, as evidenced by the specific failures set forth, above, in paragraphs 109-116, which are incorporated herein by reference, as if fully set forth in Count VI of this First Amended Complaint.

122.    But for the above-described material and proximate cause breaches of the duty of ordinary care to protect Allstate from unreasonable harm, plaintiff Allstate would not have been prevented from making an informed decision as to the risk of pursuing an appeal versus negotiating a settlement with the Johnsons.

123.    The above-described conduct of the WSABE law firm showed complete indifference to or conscious disregard for the legal rights of Plaintiff Allstate and proximately caused injury to Allstate including, but not limited to, the unwarranted and excessive jury verdict against it and the affirmance of that jury verdict on appeal.

**WHEREFORE**, as to Count VI, Plaintiff Allstate demands (a) compensatory damages against WSABE in a sum of more than $16.3 million, paid in accordance with judgment entered against Allstate on January 12, 2007; (b) post-judgment interest through the date Allstate paid the judgment award; (d) prejudgment interest from the date of payment forward; (e) an award of punitive damages against WSABE to the extent allowed under Missouri law; (f) the costs incurred in this litigation; and (g) for such other or further relief as may be just and proper in the circumstances.

36

Plaintiff Allstate demands a jury trial on all issues and claims set forth in this First Amended Complaint.

Dated: December 2, 2010

Respectfully submitted,

ALLSTATE INSURANCE COMPANY

By: /s/ Sherri Thornton-Pierce

One of Its Attorneys

Jack Hagerty (ARDC No. 6205293)
jhagerty@shefskylaw.com
Cary E. Donham (ARDC No. 6199385)
cdonham@shefskylaw.com
Sherri Thornton-Pierce (ARDC No. 6285507)
sthornton@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011

Richard E. McLeod
richmcleod@mclaw.com
MCLEOD & HENRICHS
1100 Main Street
Suite 2900
Kansas City, Missouri 64105
Telephone: (816) 421-5656
Facsimile: (816) 550-1426
Missouri Bar No. 28136
1164315_2.DOC